RICHARD HAMLISH
LAW OFFICES OF RICHARD HAMLISH
1860 BRIDGEGATE STREET
WESTLAKE VILLAGE, CALIFORNIA 91361
Telephone: (805)497-6632
FAX: (805)497-2703
California State Bar No. 122389

Attorneys for Plaintiffs:
Erick J. Feitshans
Steve Hodges

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERICK J. FEITSHANS, an individual; STEVE HODGES, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> MICHAEL KAHN, an individual; LAURA KAHN, an individual; MICHAEL ASHKIN, an individual; WINTER FILMS, LLC, a New York Limited Liability Company; IKAHN PRODUCTIONS, INC., a New York corporation;; AND DOES 1-10 inclusively, <br><br> Defendants. | Case No.: CV-02125 SAS <br><br> Honorable Shira Scheindlin <br> United States District Judge <br><br> SECOND AMENDED COMPLAINT FOR DAMAGES FOR BREACH OF CONTRACT <br><br> (28 U.S.C. §1332) <br><br> DEMAND FOR JURY TRIAL |

## SECOND AMENDED COMPLAINT

NOW COMES plaintiffs Erick J. Feitshans and Steve Hodges, who allege are follows:

## JURISDICTION

1.     This cause of action arises out of breach(s) of contract between 1) Erick J. Feitshans and  Ikahn Productions, Inc., and 2) between Steve Hodges and Winter Films, LLC.

2.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1332(a)(1) in that the amount in controversy exceeds $75,000.00 and that the plaintiffs are residents of the State of California and Defendants are residents of State of New York .

3.    Although Plaintiffs alleged that venue was proper in the United States District Court for the Central District of the State of California, the Honorable George H. King, United States District Court for the Central District of California, has determined that the United States District Court for the Southern District of New York is the proper venue for this matter.

///

**SECOND AMENDED COMPLAINT**

## PARTIES

4.      Erick J. Feitshans is and was, at all times relevant to this action, a resident and citizen of the County of Los Angeles, State of California.

5.      Steve Hodges is and was, at all times relevant to this action, a resident and citizen of the County of Ventura, State of California.

6.      Michael Kahn is and was, at all times relevant to this action, a resident and citizen of the State of New York.

7.      Laura Kahn is and was, at all times relevant to this action, a resident and citizen of  the State of New York.

8.      Michael Ashkin is and was, at all times relevant to this action, a resident and citizen of the State of New York and/or Florida and the principal [and possibly the sole] shareholder of Darby Group Companies, Inc.

9.      Winter Films, LLC is and was, at all times relevant to this action, a limited liability company organized under the laws of the State of New York.  Each and every partner/shareholder of Winter films, LLC is a citizen of the State of New York and/or Florida.

**SECOND AMENDED COMPLAINT**

10.    Ikahn Productions, Inc. is and was, at all times relevant to this action,  a corporation organized under the laws of the State of New York whose principal place of business is the State of New York.

11.    Darby Group Companies, Inc. (hereinafter "Darby") is and was, at all times relevant to this action, a corporation incorporated in the State of New York and whose principal place of business is located at 300 Jericho Quadrangle, Jericho, New York 11753.

12.    Plaintiffs are informed and believe and based thereon allege that each of the above named defendants are in some way responsible for the injuries of plaintiffs herein complained of.

13.    The true names of defendants Doe 1 through 10, inclusive, is now unknown to plaintiffs who therefore sue said defendants by such fictitious names but upon ascertaining the true identity of each Doe defendant, plaintiffs will substitute same or seek leave to do so, in lieu of such fictitious name.  Plaintiffs are informed and believe and based thereon allege that each said Doe defendant is in some way responsible for the injuries of plaintiffs herein complained of.

**SECOND AMENDED COMPLAINT**

## <u>SUMMARY OF MATERIAL FACTS</u>

14.   On or about March 1, 2000, Winter Films, LLC entered into a written employment contract with Steve Hodges.(attached as Exhibit 1 hereto)[1]

15.   The contract, which is alleged in Paragraph 14, required Winter Films to pay Hodges $60,000.00 for the period March 1, 2000 through December 31, 2000, $95,000.00 for the period January 1, 2001 thorough December 31, 2001 and $100,000.00 for the period January 1, 2002 through December 31, 2002.

16.   The contract, which is alleged in Paragraph 14, also provides that if the employer terminates the contract, the employee shall be entitled to payment in full of all of the company's remaining obligations under the contract plus an additional amount equal to the first year's salary ($60,000.00).

17.   The contract, which is alleged on Paragraph 14, provided that in the event there was a dispute between the parties, that dispute would be subject to arbitration.

---

1 Exhibit 1, 2, 3 and 4 were attached to the Original Complaint and the First Amended Complaint.  Plaintiffs hereby incorporate those exhibits by reference and request the court take judicial notice of those exhibits.

**SECOND AMENDED COMPLAINT**

18.   On or about July 12, 2002, Winter Films terminated Hodges without cause and when Winter Films refused to pay Hodges the amounts specified in the contract [the salary due from July 13, 2002 through December 31, 2002 and the amount of $60,000.00 (the first year's salary)], Winter Films breached the contract

19.   On or about October 30, 2002, Hodges made a demand for arbitration.

20.   On or about December 4, 2003, the arbitration panel awarded Hodges $85,769.46 plus interest from July 12, 2002 at a rate of 6%.(Exhibit 3)

21.   On or about July 1, 2004, the New York Supreme Court entered judgment in the amount of $85,759.46 plus interest from July 12, 2002 at a rate of 6% in favor of Hodges and against Winter Films.(Exhibit 4)

22.   On or about November 4, 1999, Ikahn Productions, Inc. entered into a written  employment contract with Erick Feitshans.(attached as Exhibit 2 hereto)

23.   Ikahn Productions was not capitalized to the extent needed in order to operate the type of business for which Feitshans was hired.

24.   The contract, which is alleged in Paragraph 22, required Ikahn to pay Feitshans $10,577.00 for a two week period in 1999, $275.000.00 for the period

**SECOND AMENDED COMPLAINT**

January 1, 2000 through December 31, 2000, $375,000.00 for the period January 1, 2001 thorough December 31, 2001 and $375,000.00 for the period January 1, 2002 through December 31, 2002.

25.    The contract, which is alleged in Paragraph 22, also provides that if the employer terminates the contract, the employee shall be entitled to payment in full of all of the company's remaining obligations under the contract plus an additional amount equal to the first year's salary ($275,000.00).

26.    The contract provided that, in the event there was a dispute between the parties, that dispute would be subject to arbitration.

27.  On or about December 31, 1999, Ikahn Productions ceased operations and assigned its rights in Feitshans' contract to Winter Films, LLC.

28.    Ikahn Productions was not dissolved on May 18, 2004.

29.  At all times from January 1, 2000 through July 12, 2002, Winter Films, LLC. performed on the Ikahn/Feitshans contract as though the parties to the contract were Feitshans and Winter Films., LLC.

**SECOND AMENDED COMPLAINT**

30.   On or about July 12, 2002, Winter Films, LLC terminated Feitshans and refused to pay Feitshans the amounts specified in the contract.

31.   On or about October 30, 2002, Feitshans made a demand for arbitration.

32.   On or about December 4, 2003, the arbitrator panel awarded Feitshans $172,938.00 plus interest from July 12, 2002 at a rate of 6%.(Exhibit 3)

33.   On or about July 1, 2004, the New York Supreme Court entered judgment in the amount of $172,938.00 plus interest from July 12, 2002 at a rate of 6%. favor of Feitshans and against Ikahn Productions.(Exhibit 4)

34.   Michael Kahn owned 50% of the shares in Ikahn;  Laura Kahn owned 50% of the shares of Ikahn.

35.   Michael Kahn held a 33.33% interest in Winter Films although he contributed less than 1% of the capital; Laura Kahn held a 33.33% interest in Winter Films LLC although she contributed less than 1% of the capital; Michael Ashkin held a 33.33% interest in Winter Films LLC although he contributed more than 99% of the capital.

**SECOND AMENDED COMPLAINT**

36. The address of both Winter Films and Ikahn Productions is 99 Wheatley Road, Old Westbury, New York which is also the address of Michael and Laura Kahn and/or Michael Ashkin.

36. Ikahn Productions reported no income for the year 2002.

37. The only expenses reported by Ikahn for the tax year 2002 were $100.00 in New York state taxes, $300.00 in New York city taxes and a $9.00 filing fee.

38. Of the $409.00 loss reported by Ikahn, Michael Kahn reported $205.00 on his K-1 and Laura Kahn reported $204.00 on her K-1.

39. Ikahn did not report as an expense, the salary of approximately $862,540.00 paid to Feitshans for the period November 4, 1999 through July 12, 2002 on its federal corporate tax return. Winter Films expensed Feitshans' compensation.

40. Winter Films reported a loss of $532,936.00 for the taxable year 2002.

41. On January 1, 2002, the partners' capital account amounted to $351,944.00. During the year, the partners (Kahn, Kahn and Ashkin) contributed $554,993.00 and there was a net loss of $539,982.00. On December 31, 2002, the partners' capital account was $366,955.00.

**SECOND AMENDED COMPLAINT**

42.  On August 1, 2002, Winter Firms disposed of assets (all assets except films), an the amount of $183,728.00,  for an amount of $000.000 (zero dollars).

43.  On December 31, 2002, Winter Films reported film assets of $183,227.00.

44.  At all times during the period November 4, 1999 through July 12, 2002, all newly employed persons of Winter Films submitted their employment applications and other employment forms to the human resources offices at Darby.

45.  At all times during the period November 4, 1999 through July 12, 2002, all payroll forms for Winter Films were submitted to the payroll department at Darby. Although Winter Films checks were used, Darby prepared the checks and Darby and/or Ashkin funded the payroll.

46.  At all times during the period November 4, 1999 through July 12, 2002, all healthcare claims Winter Films employees were submitted to the human resources department at Darby for processing.

47.  All of the expenses of Winter Films were funded by Michael Ashkin and/or Darby because Winter Films did not the adequate capital to pay salaries and expenses.

**SECOND AMENDED COMPLAINT**

48.    Winter Films did not have sufficient funds to pay salaries and expenses absent contributions by Ashkin and/or Darby.

49.    Justina Soraci was the Chief Financial Officer of Winter Films, LLC. (see Exhibit 6)  Ms. Soraci was, at the same time, the Chief Financial Officer of Darby Group Companies.  All contacts with Ms. Soraci, as chief financial officer of Winter Films were at the offices of Darby.

50.     Certain employees paychecks from Winter Films were mailed from Darby's offices.

51.     Vendors who did work for Winter films on the production of films invoiced Darby directly for that work

52.    Michael Kahn executed a lease for office space in Beverly Hills, California at some time prior to April 10, 2000 for the purpose of conducting the business of Winter Films.  This lease agreement was executed by Michael Khan personally, not in the name of any corporation (Winter Films or Ikahn Productions).

53.    On April 20, 2000, Michael Kahn requested the lease be rewritten for the purpose of showing Winter Films as the lessee instead of Michael Kahn personally.

**SECOND AMENDED COMPLAINT**

The lessor agreed to the changing of the name of the lessee but required that Michael Kahn personally guarantee the lease. Michael Kahn then personally gusranteed the lease.

## FIRST CAUSE OF ACTION

## (BREACH OF CONTRACT)

(Feitshans against Michael Kahn and Laura Kahn,

Darby Group Companies and Michael Ashkin)

54. Plaintiff refers to and repleads each and every allegation contained in paragraphs 1 through 53 and each of them inclusively and by this reference incorporates the same herein and makes each a part thereof.

55. Michael Ikahn owned 50% of the Ikahn's shares and Laura Kahn owned the other 50% of the Ikahn's shares.

56. Ikahn Productions reported had no assets, reported no income, and did not have any assets or capitalization when it hired Feitshans in 1999 and promised to pay him in excess of $1,000,00.00 over a period beginning in 1999 and ending in 2002.

**SECOND AMENDED COMPLAINT**

57. Ikahn Productions was a family owned corporation owned solely by Michael Kahn and Laura Kahn.

58. Michael Kahn and Laura Kahn were the alter egos of Ikahn Productions and used the corporation for their private benefit.

59. Defendants Ikahn Productions, Michael Kahn and Laura Kahn refused to fulfilled their obligations under the contract when they refused to pay Feitshans the balance of the monies due under the contract.

60. As a proximate cause of the aforementioned acts and omissions of defendants and each of them, and by reason thereof, Plaintiff claims damages from the defendants, and each of them, in the amount of Four Hundred Forty-Eight Thousand Seventh-Six Dollars and Ninety-two cents ($448,076.92) plus interest at the rate of 6% from July 12, 2002..

61. By reason of the aforementioned acts and omissions of defendants, and each of them, plaintiff was required to and did retain an attorney to institute and prosecute the within action, and to render legal assistance to plaintiff that they might vindicate the loss and impairment of their aforementioned rights; and by reason

**SECOND AMENDED COMPLAINT**

thereof, plaintiff request payment by defendants of reasonable attorney's fees pursuant to Paragraph 12.11 of the contract.

## SECOND CAUSE OF ACTION

### (BREACH OF CONTRACT)

### (Hodges against Michael Kahn, Laura Kahn,

### Michael Ashkin and Darby Group Companies)

62.   Plaintiff refers to and repleads each and every allegation contained in paragraphs 1 through 53 and each of them inclusively and by this reference incorporates the same herein and makes each a part thereof.

63.   Michael Kahn holds a 33 1/3 interest in Winter Films, LLC although he contributed less than a 1% to the capital.

64.   Laura Kahn holds a 33 1/3 interest in Winter Films LLC although she contributed less than a 1% to the capital.

65.   Michael Ashkin or his surrogate holds a 33 1/3 interest in Winter Films although he contributed in excess of  99% of the capital.

## SECOND AMENDED COMPLAINT

66.   Winter Films reported assets in the amount of $370,298.00 on December 31, 2002.  Winter Films reported only $3,343.00 in liabilities.  Winter Films reported its capital account in the amount of $366,955.00 on December 31, 2002.

67.   In July 2003, Michael Kahn and Michael Ashkin represented that Winter Films had no assets and they were closing the corporation.  Assets in excess of $366,955.00 suddenly disappeared from December 31, 2002 to July 2003..

68.    Winter Films is merely the alter-ego of Michael Kahn, Laura Kahn, Michael Ashkin and/or Darby.

69.   Defendants Winter Films, Michael Kahn, Laura Kahn, Michael Ashkin and Darby refused to fulfilled its obligations under the contract when it refused to pay Hodges the balance of the monies due under the contract.

70.    As a proximate cause of the aforementioned acts and omissions of defendants and each of them, and by reason thereof, Plaintiff claims damages from the defendants, and each of them, in the amount of One Hundred Thirteen Thousand Eight Hundred Forty-Six dollars and Fifteen cents ($122,152.15).

71.     By reason of the aforementioned acts and omissions of defendants, and each of them, plaintiff was required to and did retain an attorney to institute and prosecute the within action, and to render legal assistance to plaintiff that they might vindicate the loss and impairment of their aforementioned rights; and by reason thereof, plaintiff request payment by defendants of reasonable attorney's fees pursuant to Paragraph 12.11 of the contract.

## THIRD CAUSE OF ACTION

(Recognition of Judgment of the New York courts)

72.     Plaintiff refers to and repleads each and every allegation contained in paragraphs 1 through 53 and each of them inclusively and by this reference incorporates the same herein and makes each a part thereof.

73.     Plaintiff Hodges requests that this court recognize the judgment of the Supreme Court of the State of New York dated July 1, 2004 in the amount $85,769.46 together with interest at the rate of 6% from July 28, 2002 (attached hereto as Exhibit

**SECOND AMENDED COMPLAINT**

3) and in addition enter judgment against Darby Group Companies, Michael Kahn, Laura Kahn and Michael Ashkin as the alter ego of Winter Films, LLC.

74. Plaintiff Feitshans requests that this court recognize the judgment of the Supreme Court of the State of New York dated July 1, 2004 in the amount $172,938.00 together with interest at the rate of 6% from July 28, 2002 (attached hereto as Exhibit 3) and in addition enter judgment against Darby Group Companies, Michael Kahn, Laura Kahn and Michael Ashkin as the alter ego of Ikahn Productions, Inc. and its assignee Winter Films

## FOURTH CAUSE OF ACTION

(Michael Kahn and Laura Kahn are the alter ego(s) of Ikahn Productions)

75. Plaintiff refers to and repleads each and every allegation contained in paragraphs 1 through 73 and each of them inclusively and by this reference incorporates the same herein and makes each a part thereof.

**SECOND AMENDED COMPLAINT**

76.    Michael Kahn and Laura Kahn were the only shareholders of Ikahn Productions.    Michael Kahn and Laura Kahn had complete unfettered control of Ikahn Productions and used the corporation for their personal benefit.

77.    The wrongs perpetrated against Feitshans by Ikahn by not fulfilling its obligations under the contract was caused Michael Kahn and Laura Kahn's complete control of the Ikahn Productions and their lack complying with the corporate formalities.

78.    Feitshans was harmed in the amount of $448, 076.92 by the conduct of Michael Kahn and Laura Kahn.

79.    Plaintiff Feitshans prays for relief in the amount of $448,076.92 plus interest at the rate of 6% from July 13, 2002.

80.    Plaintiff Feitshans also pray for attorneys fee in an amount according to proof.

///

///

**SECOND AMENDED COMPLAINT**

## **FIFTH CAUSE OF ACTION**

(Winter Films is the alter ego of Ikahn Productions)

81.   Plaintiff refers to and repleads each and every allegation contained in paragraphs 1 through 60 and each of them inclusively and by this reference incorporates the same herein and makes each a part thereof.

82.   On or about January 1, 2000, Michael Kahn and Laura Kahn assigned all of the interests of Ikahn Productions to Winter Films.

83.   Winter Films agreed to and did assume the liability the contract obligations between Ikahn Productions and Feitshans.  Winter Films performed on the contract from January 1, 2000 through July 12, 2006.

84.   Plaintiff Feitshans prays the court grant relief to Feitshans on the Ikahn Productions contract from Winter Films.

85.  Plaintiff Feitshans also pray for attorneys fee in an amount according to proof.

///

///

**SECOND AMENDED COMPLAINT**

## SIXTH CAUSE OF ACTION

(Michael Kahn and Laura Kahn are the alter ego(s) of Winter Films)

86.  Plaintiff refers to and repleads each and every allegation contained in paragraphs 1 through 85 and each of them inclusively and by this reference incorporates the same herein and makes each a part thereof.

87.  Michael Kahn and Laura Kahn are shareholders of Winter Films and have dominating control of Winter Films along with Michael Ashkin.

88.  The wrongs perpetrated against Feitshans by Winter Films by not fulfilling its obligations under the contract was caused Michael Kahn and Laura Kahn's complete control of the Winter Films and their failure to comply with the corporate formalities.

89.  Feitshans was harmed in the amount of $448, 076.92 by the conduct of Michael Kahn and Laura Kahn.

90.  Plaintiff Feitshans prays for relief in the amount of $448,076.92 plus interest at the rate of 6% from July 13, 2002.

## SECOND AMENDED COMPLAINT

91.  Plaintiff Feitshans also pray for attorneys fee in an amount according to proof.


## SEVENTH CAUSE OF ACTION

(Darby Group Companies is the alter ego of Winter Films)

92.  Plaintiff refers to and repleads each and every allegation contained in paragraphs 1 through 91 and each of them inclusively and by this reference incorporates the same herein and makes each a part thereof.

93.   Darby controlled all of the administrative business functions of Winter Films.  Darby handled all employee relations issues and caused the payroll to be paid to the employee of Winter Films.

94.  Darby so dominated the administrative functions of Winter Films, the employees of Winter Films consulted with the Darby human resources department on employee matters and payroll.

95.  Independent vendors who performed work for Winter Films, invoiced Darby not Winter Films.


**SECOND AMENDED COMPLAINT**

96.  The wrongs perpetrated on Plaintiffs were caused, in part, by the complete dominance of Darby over the affairs of Winter Films and its failure to comply with the corporate formalities.

97.  Plaintiffs prays the court finds that Darby so dominated the affairs of Winter Films that it was the alter ego of Winter Films.

## EIGHTH CAUSE OF ACTION

(Michael Ashkin is the alter ego of Winter Films)

98.  Plaintiff refers to and repleads each and every allegation contained in paragraphs 1 through 97 and each of them inclusively and by this reference incorporates the same herein and makes each a part thereof.

99.  Michael Ashkin was the dominant (and possibly the sole) financial investor in Winter Films.

100.  Michael Ashkin caused a commingling of assets between himself and Winter Films and the commingling of services between Winter Films and Darby.

**SECOND AMENDED COMPLAINT**

Ashkin caused Darby to provide services to Winter Films which caused the wrongs suffered by Plaintiffs.

WHEREAS, plaintiffs pray for damages against defendants and each of them, as follows:

1. Steve Hodges prays for contractual damages in the amount of $113,846.15 plus interest at the rate of 6% from July 13, 2002, jointly and severely against each defendant;

2. Erick Feitshans prays for contractual damages in the amount of $448,076.92 plus interest at the rate of 6% from July 13, 2002, jointly and severely against each defendant;

3. Reasonable attorney's fees, costs and expenses according to proof;

4. Such other and further relief as this Court may deem proper, appropriate and just.

Dated: May 8, 2006    _____

RICHARD HAMLISH

**SECOND AMENDED COMPLAINT**

## DEMAND FOR JURY TRIAL

Pursuant to **Federal Rules of Civil Procedure Rule 38**, plaintiff hereby demands a trial by jury.

Dated: May 8, 2006 _____S/Richard Hamlish_____
RICHARD HAMLISH
Attorney for Plaintiffs

## SECOND AMENDED COMPLAINT

# CERTIFICATE OF SERVICE

STATE OF CALIFORNIA, COUNTY OF VENTURA

I am employed in the County of VENTURA, State of CALIFORNIA. I am over the age of 18 and not a party to the within action; my business address is 1860 BRIDGEGATE STREET, WESTLAKE VILLAGE, CALIFORNIA 91361

On May 8, 2006, I served the following document(s) described as Second Amended Complaint on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope with postage fully prepaid addressed to:

**SECOND AMENDED COMPLAINT**

Richard Romeo, Esq.
Salon Marrow Dyckman & newman, LLP
685 Third Avenue
New York, New York 10017


I declare under penalty of perjury under the laws of the State of CALIFORNIA that

the foregoing is true and correct.

Executed May 8, 2006 at Westlake Village, CALIFORNIA.


_____

Richard Hamlish

/      I HEREBY CERTIFY that on May 5, 2006, I electronically filed the foregoing

with the Court of the court for the United States District Court for the Southern

District of New York using the CM/ECF system, which will send notification of such

filing to the following:


Dated: May 8, 2006                  _____S/Richard Hamlish_____

                                    RICHARD HAMLISH

                                    Attorney for Plaintiffs


**SECOND AMENDED COMPLAINT**

**SECOND AMENDED COMPLAINT**