**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
                  :

**ERICK J. FEITSHANS and STEVE**      :
**HODGES,**         :
         :

      **Plaintiffs**     :

         :

    **- against -**     :

         :

**MICHAEL KAHN, LAURA KAHN,**    :
**MICHAEL ASHKIN, WINTER FILMS, LLC,** :
**IKAHN PRODUCTIONS, INC. and**    :
**DOES 1-10,**        :

         :

      **Defendants.**     :

         :
------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/21/06

**OPINION AND ORDER**

**06 Civ. 2125 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

This case concerns whether alleged alter egos are liable for judgments against now defunct corporations.  Prior to bringing this action, plaintiffs filed for arbitration over alleged breaches of employment contracts against two closely held corporations and two of their owners, all of whom are named defendants here. Before the arbitration hearing, the owners obtained a default judgment in New York Supreme Court permanently staying plaintiffs' arbitration against them. Plaintiffs then won an arbitration award against the two corporations and

1

subsequently had it confirmed in New York State Supreme Court. Plaintiffs now

seek to collect their arbitration award by piercing the corporate veils of the debtor

corporations to hold their owners liable and also seek new damages for the same

breaches of contract. Defendants move to dismiss the complaint in its entirety on

the grounds of res judicata and collateral estoppel, arguing that plaintiffs are

pursuing claims and issues that have already been decided by the stay of

arbitration and by the arbitration award and its confirmation. For the following

reasons, defendants' motion is granted in part and denied in part.

## II.    BACKGROUND[1]

Plaintiffs' claims arise out of alleged breaches of two employment

contracts, the first signed on November 4, 1999, between Erick J. Feitshans and

Ikahn Productions, Inc. and the second signed on March 1, 2001 between Steve

Hodges and Winter Films, LLC.[2] Each contract had an identical provision stating

that "[a]ny claim or controversy" arising out of the contract shall be arbitrated in

---

[1]    Except where otherwise noted, the following allegations are drawn
from the Second Amended Complaint and are presumed to be true for the purposes
of this motion. The complaint is poorly drafted, repetitive and hard to decipher.
While it is not the Court's obligation to rewrite the Complaint, I will construe it
liberally in deciding the motion to dismiss.

[2]    *See* Second Amended Complaint ("Compl.") ¶¶ 1, 14, 22.

New York.[3]  Each contract also designated New York as the governing law and

forum for any suit arising out of the contract.[4]

Feitshans and Hodges are both California residents.  Ikahn

Productions and Winter Films (collectively, the "Entity Defendants") were both

incorporated in New York and are now defunct.[5]  The Entity Defendants and

Darby Group Companies were solely owned by members of the same family,

namely, Michael and Laura Kahn, a married couple, and Michael Ashkin, Laura

Kahn's father (collectively with the Kahns, the "Individual Defendants").  The

Kahns each owned fifty percent of the shares in Ikahn Productions.[6]  The Kahns

each held a one-third interest in Winter Films with Ashkin holding the remaining

---

[3]     *Id.* ¶¶ 17, 26; *see also* 11/4/99 Employment Agreement between
Ikahn Productions and Feitshans and 3/1/00 Employment Agreement between
Winter Films and Hodges (collectively, the "Employment Agreements"), Exs. 1
and 2 to Compl., ¶ 10.

[4]     *See* Employment Agreements ¶ 12.9.

[5]     *See* Compl. ¶¶ 4-5, 9-10.

[6]     *See id.* ¶ 34.  According to defendants, Michael Kahn served as the
corporation's Chairman, President and CEO and Laura Kahn as its Vice President,
Secretary and Treasurer. *See* 12/2/02 Affirmation of Petitioners' Attorney Richard
P. Romeo in Support of Order to Show Cause Staying Arbitration ("Stay
Affirmation"), Ex. E to 5/30/06 Affidavit of Defendants' Attorney Richard P.
Romeo in Support of Defendants' Motion to Dismiss the Complaint ("Romeo
Aff."), ¶ 10.

3

one-third interest and contributing at least 99% of the capital.[7]  Winter Films,

Ikahn Productions and the Kahns shared the same listed address.[8]  Darby and/or

Ashkin funded all of Winter Films' expenses, including payroll and outside

vendors.[9]

On or about December 31, 1999, Ikahn Productions ceased operations

and assigned its rights in the employment contract with Feitshans to Winter

Films.[10]  From January 1, 2000 through July 12, 2002, Winter Films performed on

both plaintiffs' employment contracts.[11]  On July 12, 2002, Winter Films

terminated plaintiffs and refused to comply with contractual provisions providing

---

[7]     *See id.* ¶ 35.  According to defendants, Michael Kahn served as the
corporation's President and CEO and Laura Kahn as its Secretary and Treasurer.
*See* Stay Affirmation ¶ 5.  Defendants state that it is "uncontested" that the Entity
Defendants and Darby are owned by members of the same family.  *See*
Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint
("Def. Mem.") at 16.

[8]     *See* Compl. ¶ 36.

[9]     *See id.* ¶¶ 44-51.

[10]    *See id.* ¶ 27; *see also id.* ¶ 28 ("Ikahn Productions was not dissolved
on May 18, 2004.").

[11]    *See id.* ¶ 29; *see also id.* ¶ 39 (from November 4, 1999 through July
12, 2002, Winter Films reported on its federal income tax return that it paid
Feitshans $862,540).

4

for severance compensation.[12]  On August 1, 2002, Winter Films began disposing of all its assets other than film assets.[13]

On October 30, 2002, plaintiffs filed a joint demand for arbitration pursuant to their employment contracts against the Entity Defendants and the Kahns, seeking $220,833.34 in compensation for termination without cause.[14] Ashkin and Darby were not named in the Arbitration Demand.  On December 3, 2002, the Kahns moved by order to show cause in New York State Supreme Court for an order staying plaintiffs' arbitration against them.[15]  The Kahns argued that they were not parties to the employment contracts because Michael Kahn signed the contracts only in his corporate capacity while Laura Kahn did not execute the contracts in any capacity.[16]  After plaintiffs failed to respond, that court entered a default judgment on January 22, 2003, permanently staying the arbitration

---

[12]      *See id.* ¶¶ 18, 30.

[13]      *See id.* ¶ 42.

[14]      *See id.* ¶¶ 19, 31.  According to their arbitration demand, plaintiffs described the nature of the dispute as "[t]ermination of employment contracts without cause; action for monetary damages."  *See* 10/30/02 American Arbitration Association Demand for Arbitration ("Arbitration Demand"), Ex. D to Romeo Aff.

[15]      *See* Stay Affirmation.

[16]      *See id.* ¶¶ 7-8, 11-12.

commenced by plaintiffs against the Kahns.[17]  Plaintiffs have not contested that judgment.[18]

During 2002, the Kahns and Ashkin contributed $554,993 to Winter Films, which reported a net loss of $539,982.[19]  On December 31, 2002, the company reported total assets of $370,289, including $366,955 in capital assets, while reporting $3,343 in liabilities.[20]  In July 2003, Michael Kahn and Ashkin represented that Winter Films had no assets and that they were closing the corporation.[21]

On December 4, 2003, a three member arbitration tribunal of the American Arbitration Panel awarded Feitshans $172,938.00 in salary plus six percent interest from July 12, 2002 until paid and awarded Hodges $85,769.46 in salary plus six percent interest from July 28, 2002 until paid.[22]  The Arbitration

---

[17]     *See* 1/22/03 Order Staying Arbitration, Ex. F to Romeo Aff.

[18]     *See* Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss the Complaint ("Opp. Mem.") at 15-16.

[19]     *See* Compl. ¶ 41.

[20]     *See id.* ¶ 66.

[21]     *See id.* ¶ 67.

[22]     *See id.* ¶¶ 18, 30.  Plaintiffs received $26,869.12 more than they had claimed in their arbitration demand.

6

Award  provided: "This Award is in full settlement of all claims and counterclaims submitted to this Arbitration.  All claims not expressly granted herein are hereby, denied."[23]  On July 1, 2004, the Arbitration Award was confirmed by an order of the New York Supreme Court against Winter Films and Ikahn Productions.[24]

Plaintiffs commenced this action by filing a complaint in the United States District Court for the Central District of California on July 27, 2005.[25]  By order dated March 7, 2006, that court granted defendants' motion to transfer to this district.[26]  On May 9, 2006, plaintiffs filed a complaint in this Court against the Entity Defendants and the Kahns, as well as Ashkin and Darby Group Companies.

## III.   LEGAL STANDARD

### A.   Motion to Dismiss

A motion to dismiss pursuant to Rule 12(b)(6) should be granted only

---

[23]   *See* 12/4/03 Arbitration Award, Ex. 3 to Compl.

[24]   *See Compl.* ¶¶ 21, 33; *see also* 4/1/04 Order and Judgment, Ex. 4 to Compl.

[25]   *See* Compl. ¶ 3; *see also* 8/3/05 Complaint in Feitshans v. Kahn, No. 05 Civ. 5643, Ex. J to  Romeo Aff.

[26]   *See* Compl. ¶ 3; *see also* 3/7/06 Order granting defendants' motion to transfer after finding that the contracts' forum selection clauses are binding on the parties, Ex. M to Romeo Aff.

if "'it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief.'"[27]  When deciding a motion to dismiss, courts must accept all factual allegations in the complaint as true, and draw all reasonable inferences in plaintiff's favor.[28]  "While the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice."[29]  Even though the plaintiff's allegations are taken as true, the claim may still fail as a matter of law if it appears beyond doubt that the plaintiff can prove no set of facts in support of its claim which would entitle it to relief, or if the claim is not legally feasible.[30]  A party may raise a defense of res judicata, collateral estoppel, or judicial estoppel on a motion to dismiss pursuant to Rule 12(b)(6) where the basis for that defense is set forth on the face of the complaint or established by public record.[31]  While consideration of a motion to dismiss under Rule 12(b)(6) is

---

[27]    *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

[28]    *See Kirsch v. Liberty Media Corp.*, 449 F.3d 388, 392 (2d Cir. 2006) (citation omitted).

[29]    *Law Offices of Curtis V. Trinko, L.L.P., v. Bell Atl. Corp.*, 309 F.3d 71, 74 (2d Cir. 2002) (quotation omitted).

[30]    *See Allaire Corp. v. Okumus*, 433 F.3d 248, 250 (2d Cir. 2006).

[31]    *See Cameron v. Church*, 253 F. Supp. 2d 611, 619 (S.D.N.Y. 2003) (deciding res judicata and collateral estoppel issues on motion to dismiss). *See also Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) ("It is

8

generally limited to consideration of the complaint itself, consideration of

materials outside the complaint "is not entirely foreclosed."[32]  It is permissible for

the court to consider materials outside the record that were relied upon in drafting

the complaint or that are integral to a complaint only if the court has determined

that there are no disputes as to the authenticity, accuracy and relevance of such

materials.[33]

### B.    Preclusion and Estoppel

#### 1.    Res Judicata

Res judicata, or claim preclusion, is the long-accepted principle that

"'a final judgment on the merits of an action precludes the parties or their privies

from relitigating issues that were or could have been raised in that action.'"[34]  Res

judicata ordinarily applies "if the earlier decision was (1) a final judgment on the

merits, (2) by a court of competent jurisdiction, (3) in a case involving the same

---

well established that a district court may rely on matters of public record in
deciding a motion to dismiss under Rule 12(b)(6), including case law and
statutes.").

[32]    *Faulkner v. Beer*, — F.3d —, No. 05-1568, 2006 WL 2588014, at *3
(2d Cir. Sept. 8, 2006).

[33]    *See id*.

[34]    *San Remo Hotel, L.P. v. San Francisco*, 545 U.S. 323, 332 n.16
(2005) (quoting *Allen v. McCurry*, 449 U.S. 90, 948 (1980)).

9

parties or their privies, and (4) involving the same cause of action."[35]  "'[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment is entered.'"[36]  Like the Second Circuit, New York applies a "transactional analysis" to determine whether particular claims are part of the same transaction for purposes of res judicata, analyzing "'whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'"[37]

### 2.   Collateral Estoppel

Collateral estoppel, or issue preclusion, precludes relitigation of an issue where "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the

---

[35]     *Stephenson v. Dow Chem. Co.*, 273 F.3d 249, 259 (2d Cir. 2001), *aff'd in part, vacated in part on other grounds*, 539 U.S. 111 (2003).

[36]     *Jacobson v. Fireman's Fund Ins. Co.*, 111 F.3d 261, 265 (2d Cir. 1997) (quoting *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984)).

[37]     *Chen v. Fisher*, 6 N.Y.3d 94, 100-01 (2005) (quoting Restatement [Second] of Judgments § 24[2]).

issue was necessary to support a valid and final judgment on the merits."[38] "The burden of showing that an issue raised in a subsequent proceeding is identical to one that was raised and necessarily decided in the prior action rests squarely on the party moving for preclusion."[39]

## C. Alter Ego

Piercing the corporate veil is the equitable limitation of the principle that corporations have a separate and independent legal personality such that shareholders are not personally liable for corporate acts and obligations. To pierce the corporate veil New York requires a two-part showing: (1) that the owners exercised complete domination of the corporation with respect to the transaction at issue; and (2) that such domination was used to commit a fraud or wrong which caused the plaintiff's injury.[40] Because it is legitimate to incorporate to avoid personal liability, plaintiffs seeking to pierce the corporate veil bear a "heavy

---

[38]     *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138, 146 (2d Cir. 2005) (quotation marks and citation omitted); *see also Jeffreys v. Griffin*, 1 N.Y.3d 34, 39 (2003) (same under New York Law).

[39]     *Cobb v. Pozzi*, 363 F.3d 89, 114 (2d Cir. 2004) (citation and quotation marks omitted); *see also Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 500-01 (1984) (same under New York law).

[40]     *See American Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997) (citing *Morris v. New York State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141 (1993)).

11

burden" in showing that defendants have perverted the privilege of doing business in a corporate form.[41]  New York does not recognize an independent cause of action to pierce the corporate veil; rather "it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners."[42]

## IV.   DISCUSSION

Plaintiffs seek to enforce the arbitration award and its confirmation against the Individual Defendants and Darby.  They claim that the corporate veils of the now defunct Entity Defendants should be pierced and defendants should be held liable for the Entity Defendants' obligations to pay the arbitration award. This claim is actionable and is not estopped.  Because it is properly pled and constitutes a legally tenable theory defendants' motion to dismiss this claim is denied.  However, plaintiffs' claims for new damages for the same breach of contract that was already arbitrated against the Entity Defendants is precluded because these claims merely seek to relitigate what has already been decided.

### A.   Plaintiffs' Claims for New Damages on Claims that Have Already Been Arbitrated Are Barred by Res Judicata.

---

[41]   *TNS Holdings, Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 339 (1998).

[42]   *Morris*, 82 N.Y.2d at 141.

Plaintiffs' first two causes of action, styled as "Breach of Contract", seek additional damages for the same breaches of Feitshans and Hodges' employment contracts.[43] The only novel aspects of these counts is that: (1) they seek greater damages than were sought and awarded in arbitration, and (2) new defendants are alleged to be responsible as alter egos. Feitshans seeks $448,076.92 and Hodges seeks $122,152.15 plus six percent interest from July 12, 2002 against all defendants jointly and severally.

Defendants correctly argue that these breach of contract claims are barred by res judicata because they seek to relitigate the very same claims that have already been decided. As defendants note, the application of res judicata is not limited to prior court proceedings but may also apply to an adjudication by an arbitration panel.[44] According to the transactional approach for determining the preclusive effect of a prior action, "multiple claims based upon a single contract are considered part of the same transaction" unless plaintiffs could not have brought a claim in the original action, as when a breach of contract has occurred

---

[43]     *See* Compl. ¶¶ 54-71.

[44]     *See* Def. Mem. at 11-12 (citing *Jacobson*, 111 F.3d at 265 and *Sabbagh v. Charles Schwab & Co.*, No. 01 Civ 4824, 2002 U.S. Dist LEXIS 14679, at *12 (S.D.N.Y. Aug. 9, 2002) (not available on Westlaw)).

after the first adjudication.[45] Here, plaintiffs can only have "one recovery for a single wrong" and plaintiffs' different legal theories as to recovery on the breaches merge with their arbitration award.[46]

Naming new defendants in this action does not help plaintiffs because res judicata "operates to preclude claims, rather than particular configurations of parties."[47] The only real question is whether defendants, who were not parties of record in the arbitration and its confirmation, are in privity with the Entity Defendants such that res judicata applies.[48] Given that the Individual Defendants were the sole owners (as well as directors and officers) of the Entity Defendants and that their interests were at stake in the prior arbitration which they likely

---

[45]    *Hanley v. Apertivo Rest. Corp.*, No. 97 Civ 5768, 1998 WL 307376, at *3 (S.D.N.Y. June 11, 1998) (citing to *Prime Mgmt. Co. v. Steinegger*, 904 F.2d 811, 816 (2d Cir. 1990)). *Accord Interoceania Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2d Cir. 1997).

[46]    *European Am. Bank v. Cain*, 436 N.Y.S.2d 318, 320-21 (1981). *Accord Norman v. Niagra Mohawk Power Corp.*, 873 F.2d 634, 638 (2d Cir. 1989) ("new legal theories do not amount to a new cause of action").

[47]    *Cameron*, 253 F. Supp. 2d at 623.

[48]    *See Amalgamated Sugar Co. v. NL Indus.*, 825 F.2d 634, 640 (2d Cir. 1987) ("Privity represents a legal conclusion that the relationship between the parties is sufficiently close to support preclusion."); *see also Vets North, Inc. v. Libutti*, No. 01 Civ. 7773, 2003 WL 21542554, at *11 (S.D.N.Y., Apr. 21, 2003) (stating that courts "have broadly construed the concept of privity . . . to include any situation in which the relationship between the parties is sufficiently close to justify preclusion") (internal quotation and citation omitted).

controlled, there is a sufficiently close relationship between the parties in both actions such that privity exists.  Plaintiffs do not contest this.  Rather, plaintiffs argue that because the defendants are privies of the Entity Defendants, they are bound by and liable for the arbitration award.[49]  In so arguing, plaintiffs erroneously confuse the concepts of privity and alter ego.[50]  A finding of privity between a corporation and an individual for res judicata purposes is *not* equivalent to a finding that an individual has exercised total control over a corporation to engage in wrongdoing such that he should be held liable for the corporations' debts.  The question of whether defendants can be held liable as alter egos is a separate issue.

For these reasons, plaintiffs are precluded by res judicata from relitigating their damages award and therefore defendants' motion to dismiss is granted with respect to the first two causes of action in the Complaint.

**B.      Plaintiffs' Alter Ego Claims to Enforce the Prior Award Are Not Collaterally Estopped**

The Plaintiffs' third cause of action asks the Court to "recognize the judgment" of the New York Supreme Court that confirmed the arbitration award

---

[49]      *See* Opp. Mem. at 6-8.

[50]      *See* Memorandum of Law in Further Support of Defendants' Motion to Dismiss the Complaint ("Reply Mem.") at 3-4.

on July 1, 2004 and enter judgment against the Individual Defendants and Darby

for the same principal and interest as the original award against the Entity

Defendants.[51]  Defendants argue that plaintiffs are collaterally estopped from

relitigating the issue of alter ego liability because it has been adjudicated by the

New York Supreme Court's default judgment permanently enjoining plaintiffs

from pursuing the arbitration that they commenced on October 20, 2002 against

the Kahns.[52]  Plaintiffs respond that defendants have failed to meet their initial

burden of showing that the identical issue of alter ego liability was necessarily

decided by the prior judgment.[53]  As borne out by the face of the arbitration

demand, plaintiffs never explained why they named the Kahns.[54]  Furthermore,

defendants explicitly moved for a stay on the ground that the Kahns could not be

compelled to arbitrate because they were not signatories to the contracts.[55]

Plaintiffs argue that the issue of the Kahns' alter ego liability for the alleged

breaches of contract was never even raised to – let alone necessarily decided by –

---

[51]     *See* Compl. ¶¶ 72-74.

[52]     *See* Def. Mem. at 18-22.

[53]     See Opp. Mem. at 14.

[54]     *See* Arbitration Demand.

[55]     *See* Stay Affirmation ¶¶ 7-9, 11-12.

the court before it issued the default judgment granting the stay.

Defendants attempt to defeat these arguments by noting that: (1) in order for an issue to have been necessarily decided, the prior court need not have explicitly discussed that issue if "by necessary implication it is contained in that which has been explicitly decided;"[56] and (2) a default judgment may be a judgment on the merits for the purpose of res judicata.[57]  Combining these legal principles, defendants argue that because the Kahns were nonsignatories to the agreements, the only basis for plaintiffs naming them must have been an alter ego theory, which the court recognized and then necessarily, albeit implicitly, decided before issuing the default judgment.[58]  This entirely speculative argument is unavailing.

Defendants analogize this case to *Ritchie v. Landau*, which affirmed the trial court's dismissal of a claim based on collateral estoppel.[59]  There, an

---

[56]     *Norris v. Grosvenor Mktg. Ltd.*, 803 F.2d 1281, 1285 (2d Cir. 1986) (internal quotation and citation omitted) (cited in Def. Mem. at 19).

[57]     *See* Reply Mem. at 7 (citing *Amadasu v. Bronx Lebanon Hosp. Ctr.*, No. 03 Civ. 6450, 2005 WL 121746, at *6 (S.D.N.Y. Jan. 10, 2005) ("[a] judgment on the merits for purposes of res judicata is not necessarily a judgment based upon a trial of contested facts; it may, for example, be a default judgment")).

[58]     *See* Def. Mem. at 21.

[59]     *See Ritchie v. Landau*, 475 F.2d 151, 152 (2d Cir. 1973).  *Compare with Briarpatch Limited, L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 303 (2d Cir.

employee won an arbitration award against his employer for breach of contract. After confirming the award and receiving payment, plaintiff then filed an action against the corporation's officers for the same breach of contract seeking greater damages. However, *Ritchie* is easily distinguished, because here the arbitration award has never been satisfied.

While plaintiffs' complaint is poorly organized, a close reading reveals a viable theory for holding defendants liable as alter egos of the Entity Defendants. The first prong for piercing the corporate veil is readily met, as the Individual Defendants are alleged to be the sole owners of the Entity Defendants, as well as their officers and directors. The second prong, that the Individual Defendants used the Entity Defendants to wrong the plaintiffs, is also adequately pled. Plaintiffs' theory is that the Entity Defendants were undercapitalized with respect to their ability to perform on plaintiffs' contracts.[60] After plaintiffs made an arbitration demand, the defendants removed all the assets that they had previously infused into Winter Films and then inequitably hid behind the corporate

---

2004) ("Unlike the employee in *Ritchie*, who had already fully recovered the prior judgment and could only therefore ask for a higher figure, plaintiffs have not recovered *any* of their prior award.").

[60]     *See* Compl. ¶ 56 (alleging that Ikahn Productions had no assets and reported no income when it hired Feitshans in 1999 and contracted to pay him over one million dollars through 2002).

form – now penniless – to avoid paying for the injuries they caused plaintiffs.[61]
Because plaintiffs' theory of alter ego is properly pled and not collaterally
estopped as to the alleged liability for the original arbitration award, defendants'
motion to dismiss is denied with respect to the Complaint's third cause of action.[62]

The only remaining issue is whether plaintiffs are barred from
seeking attorneys' fees. Defendants argue that plaintiffs are precluded from doing
so because the arbitration award did not award such fees and because it stated that
the award was in "full settlement" of all submitted claims.[63] However, paragraph
12.11 of the contracts states that "if any legal action" is brought to enforce the
agreement or because of "any alleged dispute, breach, [or] default" in connection
with the agreement, "the successful or prevailing party shall be entitled to recover
reasonable attorneys' fees and other costs it incurred in that action or proceeding,

---

[61]     *See id*. ¶ 67 (alleging that after the arbitration demand was filed in
October, assets of over $366,955 "suddenly disappeared" from Winter Films from
December 31, 2002 to July 2003).

[62]     Plaintiffs' five remaining causes of action repetitively plead that the
defendants are alter egos of the Entity Defendants and are therefore liable for
plantiffs' prior arbitration award (as in the third cause of action) and newly
claimed damages for the same contractual breaches (as in the first and second
causes of action). For the reasons above, these claims are dismissed to the extent
that they seek damages other than what has been awarded and confirmed.

[63]     *See* Def. Mem. at 18; *see also* Arbitration Award.

in addition to any other relief to which it may be entitled."[64]  Based on this language, plaintiffs may be able to recover attorneys' fees and costs if they prevail on their alter ego claim.  Therefore, defendants' motion to dismiss plaintiffs' claims for attorneys' fees is denied.

## V.   CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted in part and denied in part.  The Clerk of the Court is directed to close this motion [Docket #16].  A conference is scheduled for October 30, 2006 at 4:30pm.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            September 21, 2006

---

[64]      *See* Employment Agreements.

## - Appearances -

**For Plaintiffs:**

Richard Hamlish, Esq.
LAW OFFICES OF RICHARD HAMLISH
1860 Bridgegate Street
Westlake Village, California 91361
Telephone: (805) 497-6632

**For Defendants:**

Richard P. Romeo, Esq.
SALON MARROW DYCKMAN NEWMAN & BROUDY, LLP
292 Madison Avenue
New York, New York 10017
Telephone: (212) 661-7100