UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ERICK J. FEITSHANS, an individual;
STEVE HODGES, an individual,

                       Plaintiffs,

         vs.

MICHAEL KAHN, an individual;
LAURA KAHN, an individual;
MICHAEL ASHKIN, an individual;
WINTER FILMS, LLC, a New York
Limited Liability Company; IKAHN
PRODUCTIONS, INC., a New York
Corporation; AND DOES 1-10 inclusively,

                  Defendants.
-------------------------------------------------------x

**06 Civ. 2125 (SAS) (THK)**

**DEFENDANTS' RESPONSES
AND OBJECTIONS TO
PLAINTIFFS' PROPOSED
JURY INSTRUCTIONS**

Defendants Michael Kahn ("M. Kahn"), Laura Kahn ("L. Kahn"), Michael Ashkin

("Ashkin"), Darby Group Companies ("Darby"), Winter Films, LLC ("Winter Films") and Ikahn

Productions ("Ikahn"), (M. Kahn, L. Kahn, Ashkin and Darby collectively the "Alter-Ego

Defendants"; Winter Films and Ikahn collectively the "Entity Defendants"; all defendants

collectively the "Defendants") respectfully submit the following responses and objections to

Plaintiffs Erick Feitshans' and Steve Hodges' (collectively the "Plaintiffs'") Special Jury

Instructions dated December 21, 2007 ("Plaintiffs' Proposed Instructions"):

## GENERAL OBJECTIONS

Defendants generally object to Plaintiffs' Proposed Instructions to the extent that they are

argumentative, and will tend to create juror bias.  Defendants further generally object to

Plaintiffs' Proposed Instructions because they either improperly state the law or offer an

incomplete statement of law which will tend to confuse the jurors.  Without additional

instructions supplementing Plaintiffs' Proposed Instructions, or putting them in context,

Plaintiffs' Proposed Instructions would tend significantly to mislead the jury as to the applicable

law, and prejudice the Defendants.  For a complete and accurate recitation of the applicable law,

Defendants refer the Court to their Requests to Charge dated December 21, 2007 ("Defendants'

Requests to Charge")[1] , a copy of which is annexed hereto as Exhibit A, and propose as

alternatives to Plaintiffs' Proposed Instructions the instructions contained therein.  Subject to and

without waiving any of the foregoing general objections, Defendants specifically respond to

Plaintiffs' Instructions as follows:

## <u>PLAINTIFFS' SPECIAL JURY INSTRUCTION NO. 1[2]</u>

*Plaintiffs Erick Feitshans and Steve Hodges claim that Defendants Michael Kahn, Laura*

*Kahn, Michael Ashkin and Darby Group Companies are the alter egos of Winter Films. Plaintiff*

*Erick Feitshans also claims that Winter Films is the alter ego of Ikan [sic] Productions.*

*Plaintiff Erick Feitshans also claims that Michael Kahn and Laura Kahn are the alter egos of*

*Ikan [sic] Productions.  Finally Plaintiffs Erick Feitshans and Steve Hodges claim that*

*Defendants Michael Kahn, Laura Kahn, Michael Ashkin and Darby Group Companies should be*

*viewed as a family enterprise and as such the alter ego of Winter Films.*

Defendants specifically object to the foregoing paragraph because it seeks to impose

liability on the Alter-Ego Defendants as a whole (and thus, disregards Plaintiffs' burden of proof

with respect to each separate Defendant) based solely on a family relationship.  A family

---

[1]        Item No. 100 on the docket sheet for this matter.

[2]        The language of Plaintiffs' Proposed Instructions shall appear in *italics.*

relationship, without more, cannot support imposition of alter ego liability. *See e.g. In re Armen Dig. Graphics, Ltd. v. Amalgamated Lithographers of Ame.*, No. 96 Civ. 5844, 1997 U.S. Dist LEXIS 11938, *29-30 (S.D.N.Y. Aug. 8, 1997)(Sand, D.J.)  Plaintiffs cannot meet their burden of proof with respect to a specific Alter Ego Defendant without proving that such Alter Ego Defendant so completely dominated the Entity Defendants and their separate identities were so disregarded that they primarily transacted that defendant's personal business rather than their own business and that they became that Defendant's alter-ego. *Gartner v. Snyder, 607 F.2d 582, 586 (2d Cir. 1979) Favour Mind Ltd. v. Pacific Shores, Inc.*, No. 98 Civ. 7038, 2004 U.S. Dist. LEXIS 637 (S.D.N.Y. January 16, 2004)(Daniels, D.J.) (quoting *Gartner v. Snyder*, 607 F.2d 582, 586 (2d Cir. 1979))  Defendants further object to this paragraph because it may tend to confuse the jurors.

     Defendants instead propose as an alternative the following:

     Plaintiffs seek to hold the other Defendants liable for the balance due on Plaintiffs' unsatisfied judgment against Winter Films and Ikahn Productions.  They seek to do this by a procedure referred to as piercing the corporate veil.  In considering whether to pierce the corporate veil of Winter Films and Ikahn Productions and hold the other Defendants liable for the unpaid judgments against Winter Films and Ikahn Productions, you must remember that Plaintiffs must also overcome a legal presumption - a legal presumption which you must accept in Defendants' favor - known as corporate regularity.

     I will explain to you what piercing a veil means.

     If you do business with a corporation, it has a veil over it.  That corporation alone has liability for its obligations, and you do not lift that veil and saddle that obligation on somebody else.  So lawyers and judges say the doctrine is "piercing the corporate veil" if you want to hold somebody else liable for the debts of that corporation.  And that's what this case is about.  Plaintiffs seek to pierce the corporate veil of Winter Films and Ikahn Productions to hold the other Defendants liable for the debts of Winter Films and Ikahn Productions.

It is presumed that Winter Films and Ikahn Productions, like any corporation, are separate legal persons, separately responsible for their own debts, and that related corporations, such as parents, subsidiaries, or sister corporations, are separate, independent entities which alone are separately responsible for their own separate debts, even if the corporations are owned and controlled by the same individuals. It is presumed, in this case, Winter Films and Ikahn Productions, like any corporation, are individual, legal persons separate and part from their affiliates and their shareholders, officers and directors, who are not responsible for the debts of Winter Films and Ikahn Productions.

That is the essence of a corporation. Courts are reluctant to disregard the separate existence of related corporations by piercing the corporate veil and have consistently given substantial weight to the presumption of separateness.

What the Plaintiffs are really asking the jury to do is to discard the separate legal identity of Winter Films and Ikahn Productions and find that Plaintiffs, in effect, made an employment contract with not only Winter Films and Ikahn Productions, but with the other Defendants as well.

Exhibit A at 7-8.

*This amounts to claims that those parties should be treated as being one and the same entity or persons under the law so that the separate corporate existence of Winter Films should be disregarded and Defendants Michael Kahn, Laura Kahn, Michael Ashkin and Darby Group Companies should be held liable for the obligations of Winter Films.*

Defendants also object to this sentence because the way it is phrased, it may indicate to the jury that the parties "should" be treated as one. Defendants further object to this paragraph for the reasons set forth in their response and objection to the first paragraph of this Instruction. Defendants instead propose the following alternative: "This means that Plaintiffs claim that each of those separate parties should be treated as being one and the same entity or person under the law so that the separate corporate existence of Winter Films should be disregarded and Defendants Michael Kahn, Laura Kahn, Michael Ashkin and Darby Group Companies should

130639                                         4

each be held liable for the obligations of Winter Films.

     *With respect to that issue, you are instructed that a corporation generally, is a separate entity authorized under the law to do business in its own right and on its own credit as distinguished from the credit and assets of other persons or corporations.  Also the mere fact that one or two individuals own and control the stock structure of a corporation, or that two corporations have common officers or directors, or both, does not mean that the corporation may be regarded as the alter ego of its shareholders.*

     *However, the existence of a corporate entity may be disregarded where it is proved that the corporation was a mere instrumentality or agent of individuals owning all or most of its shares or another corporation or where the purpose of corporation was to accomplish the personal interests of the shareholders of the corporation.*

     *Where one or more of the principal shareholders or officers or directors and/or one or more of the corporations conducts the business and/or manages the assets, those persons may be found individually liable for the corporate obligations if it is proved that they have consistently engaged in a course of conduct of ignoring the existence of the corporate entity and has conducted the business as an individual by exercising such paramount and personal control over the operations of the corporations that their corporate existence should be disregarded and their business interests and persons' own personal interests cannot be reasonably separated.*

     *The following factors that should be taken into account are:*

*(1) the absence of formalities and paraphernalia that are part and parcel of the corporate existence, i.e., issuance of stock, election of directors, keeping of corporate records and the like,*

*(2) inadequate capitalization,*

*(3) whether funds are put in and taken out of the corporation for personal rather than corporate*

*purposes,*

*(4) overlap in ownership, officers, directors and personnel,*

*(5) common office space, address and telephone numbers of corporate entities,*

*(6) the amount of business discretion displayed by the allegedly dominated corporation, (7)*

*whether the related corporations deal with the dominated corporation at arms length, (8)*

*whether the corporations are treated as independent profit centers,*

*(9) the payment or guaranty of debts of the dominated corporation by other corporations or*

*individuals in the group, and*

*(10) whether the corporation in question had property that was used by other corporations as if*

*it were its own.*

> *Plaintiffs need not prove all of the above mentioned factors but must show a substantial number of these factors are present.  You must look at these factors and consider the totality of the evidence.*

*Passalacqua Business v. Resnick Developers, 933 F.2d 131, 139 (2d Cir. 1991)*

Defendants also object to this Instruction because it does not accurately reflect the New York test for piercing the corporate veil.  First, the Instruction fails to advise the jury that the 10 factors provided by *Wm. Passsalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131 (2d Cir. 1991) are used to determine only whether a defendant exercised complete control or domination over a corporation, which is only the first prong in determining alter-ego.  Plaintiff's Instruction is further incomplete in that it fails to advise the jury that even if they find total domination or control, they still need to determine whether that domination was used to commit a

fraud or a wrong against Plaintiffs which caused the Plaintiffs injury. *See e.g. See generally Feitshans v. Kahn*, 2007 U.S. Dist, LEXIS 63028 (S.D.N.Y. Aug. 24, 2007)(Scheindlin, D.J.). For an alternative to this portion of the Instruction, Defendants respectfully refer this Court to pages 9-19 of Defendants' Requests to Charge which Defendants submit correctly and completely explains the considerations relevant to the "domination and control" prong of the veil piercing analysis under *Passalacqua*. Exhibit A at 9-19.[3]

## PLAINTIFFS' SPECIAL JURY INSTRUCTION NO. 2

*Corporate formalities consist of the issuance of stock certificates, elections of directors and officers, holding corporate meetings and keeping records of those meetings. Passalacqua Business v. Resnick Developers, 933 F.2d 131, 139 (2d Cir. 1991)*

Defendants object to this instruction because it misstates the applicable law by narrowly defining "corporate formalities," a factor to be used in determining whether an individual or entity has total domination or control over an entity. Further, to accurately reflect the law applicable to the following of corporate formalities in the context of Plaintiffs' claims, the Instruction should also note that closely held corporations are not required strictly to follow corporate formalities. *See e.g. Feitshans v. Kahn*, 2007 U.S. Dist, LEXIS 63028, *22 (S.D.N.Y. Aug. 24, 2007)(Scheindlin, D.J.); *Roos v. Aloi*, 127 Misc.2d 864, 487 N.Y.S.2d 637 (N.Y. Sup. 1985); *Leslie, Semple & Garrison, Inc. v. Gavit & Co., Inc.*, 81 A.D.2d 950, 439 N.Y.S.2d 707 (3rd Dept. 1981); *Bahar v. Schwartzreich*, 204 A.D.2d 441, 611 N.Y.S.2d 619 (2nd Dept. 1994).

Defendants propose the following as an alternative:

---

[3]     Because of the length of the Defendants' proposed alternative instructions, Defendants are only citing page numbers from their Requests to Charge, a copy of which is annexed hereto as Exhibit A, and the contents of which are specifically incorporated herein.

(1) whether or not Ikahn Productions and Winter Films followed corporate formalities:

The fact that Michael Kahn was the controlling principal of Winter Films and Ikahn Productions is by itself insufficient to justify disregarding a corporate form of Winter Films and Ikahn Productions.  Here, you need to consider whether or not Ikahn Productions and Winter Films substantially followed corporate formalities.  For example, were they properly formed; did they make the necessary filings with the state when they were incorporated, dissolved or when they changed their names or to qualify to transact business in a particular state; did they keep and maintain their own books and records; did they adopt written bylaws or written operating agreements, did they have business plans; did they elect officers and directors; did they hold meetings?  Substantial adherence to corporate formalities supports a finding of corporate independence rather than domination. Keep in mind while considering this factor, that the companies in this case were closely held, that is, they had a small group of shareholders or owners who also happened to be related by blood or marriage. Closely held companies are not expected strictly to follow corporate formalities as are large, publicly held corporations.  Thus, even if you find that not every corporate formality was strictly followed by Ikahn Productions and Winter Films, but that there was generally compliance with corporate formalities, you may then still find that this factor weighs in favor of Defendants, meaning that the Entity Defendants, Ikahn Productions and Winter Films, mostly followed corporate formalities.  Failure to follow corporate formalities standing alone is never sufficient to find domination.

Exhibit A at 12-13.  Defendants respectfully submit that this alternative contains a more complete and accurate recitation of New York law regarding corporate formalities with respect to proving total domination and control over an entity.

## PLAINTIFFS' SPECIAL JURY INSTRUCTION NO. 3

*Inadequate capitalization means capitalization very small in relation to the nature of the business of the corporation and the risks attendant to such businesses.  ....'[t]he adequacy of capital is to be measured as of the time of formation of the corporation, not at some time after the corporation has began to transact business.*

*W. Fletcher, Cyclopedia of the Law of Private Corporations § 41.33 (1990 perm. ed.) page 652*

130639                                          8

Defendants object to this Instruction because it misrepresents the law applicable to factors relating to undercapitalization with respect to proving total domination or control over the entity. In order to be sufficiently capitalized, an entity is not required from the very beginning of its existence to have enough funds to meet all of its potential costs moving forward. Rather, capitalization is *measured by the ability of a corporation to meet its day to day expenses. See* e.g. Minpeco, S.A. v. Hunt, 686 F.Supp 427, 436 (S.D.N.Y. 1988) ("In this case, it is undisputed that [the company] had sufficient capital to pay its creditors... Hence, evidence of [its] low capitalization is not significant to the issue at hand."); *see also Om Intercontinental*, 2006 U.S. Dist. LEXIS 67561, at *27-28; *Oriental Comm. and Shipping Co., Ltd. v. Rosseel*, 702 F.Supp. 1005, 1020 (S.D.N.Y. 1988)(Leisure, D.J.) ("[T]he mere fact that an entity may or may not have the capital to respond to a potential large award against it does not justify piercing the corporate veil."). The essential inquiry here is whether the Entity Defendants had enough funds to generally to meet the costs of their day-to-day operations. In addition, in order fully to instruct the jurors of precedent regarding undercapitalization in the context of alter ego claims, the Instruction must also state that undercapitalization "standing alone, is an insufficient reason to pierce the corporate veil." *See e.g. Al Sayegh Brothers Trading (LLC) v. Doral Trading & Export, Inc., 219* F.Supp.2d 285, 294 (E.D.N.Y. 2002); *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F.Supp.2d 265, 274-275 (S.D.N.Y. 2004).

Thus, defendants propose the following instruction as an alternative:

(2) whether or not Ikahn Productions and Winter Films were adequately capitalized:

Here, you need to determine whether Ikahn Productions and Winter Films had sufficient funds with which to operate their businesses. Adequate capitalization is

also a sign of corporate independence, that is, a factor you should weigh against piercing of the corporate veil of an entity. In order to be sufficiently capitalized, an entity is not required from the very beginning of its existence to have enough funds to meet all of its costs moving forward. [See <u>Minepeco, S.A. v. Hunt et al.</u>, 686 F.Supp. 427, 436 (S.D.N.Y. 1988)]. The failure to place any amount of capital at risk beyond nominal capital required by corporate statutes is not a wrong. It does not require or permit a piercing of the corporate veil. The law allows individuals or allied corporations to incorporate for the very purpose of avoiding personal liability. One who deals with a corporation, like one who deals with an individual person, takes whatever risks that flow from the financial ability or inability of that corporation or that natural person to answer for its, his, or their liabilities.

One who deals with a corporation is entitled, and, indeed, obliged to do his own investigation of the finances, if he is concerned with them. There is no proof here that Plaintiffs were concerned. Just as one who deals with an individual is entitled and obliged to satisfy himself regarding the individual's financial health if that matter is considered significant, the same is true when dealing with a corporation. Whether or not an entity is adequately capitalized depends on whether or not it has enough funds to generally meet the costs of its day-to-day operations. Thus, for this factor, you should consider whether or not Winter Films and Ikahn Productions had sufficient funds with which to operate. For example, were the companies able to pay their bills; were they able to pay the salaries of their employees; were they able to pay their rents, their taxes; and other normal expenses incurred by a business? In addition, the mere fact that an entity may not have had sufficient capital to satisfy a large award or claim or judgment against it does not justify finding domination. Undercapitalization, standing alone, is never sufficient to find domination.

Exhibit A at 13-14. Defendants respectfully submit that this alternative contains a more complete and accurate recitation of New York law regarding adequate capitalization with respect to proving total domination or control over an entity.

## PLAINTIFFS' SPECIAL JURY INSTRUCTION NO. 4

*Arms length is been defined as relating to dealings between two parties who are not related or not on close terms and who are presumed to have roughly equal bargaining power; not involving a confidential relationship.*

*Black's Law Dictionary, 7th Ed., 1999, page 103.*

Defendants specifically object to this Instruction because it is confusing and contains an incomplete (and thereby inaccurate) definition of arms length transactions with respect to proving total domination or control. If this Instruction were to be permitted, it may indicate to the jury that there can never be an arms length dealing between members of the same family or between entities owned by members of the same family.

Defendants instead propose as an alternative the following instruction:
(7) whether the related corporations deal with the dominated corporation at arms' length:

When Ikahn Productions and Winter Films dealt with Darby, did Darby treat them as if they were two separate entities, or did they take advantage of Winter Films, to the benefit of Darby and to the detriment of Winter Films? Did any of the other Defendants use the assets or the cash of the Entity Defendants (Ikahn Productions and Winter Films) substantially for their own individual purposes and for their own individual benefit, to the detriment of the Entity Defendants or did the use of that assets or cash include benefits to the Entity Defendants? Did any of the other Defendants use leased space of the Entity Defendants (Ikahn Productions and Winter Films) substantially for their own purposes to their own benefit and to the detriment of the Entity Defendants? Did the employees of the Entity Defendants (Ikahn Productions and Winter Films) perform work or services on behalf of any of the other Defendants without compensating the Entity Defendants? The test here is whether the related corporations dealt with the Entity Defendants (Ikahn Productions and Winter Films) in such a fashion that they used the assets of the Entity Defendants as their own, substantially for their own benefits and to the detriment of the Entity Defendants.

Exhibit A at 17. Defendants respectfully submit that this alternative contains a more complete and accurate recitation of New York law regarding arms length dealings with respect to proving total domination and control over an entity.

## PLAINTIFFS' SPECIAL JURY INSTRUCTION NO. 5

*However, excessive control alone and by itself which causes the injury to the Plaintiffs,*

*permits the corporate form to be disregarded.*

*Passalacqua Business v. Resnick Developers, 933 F.2d 131, 139 (2d Cir. 1991)*

Defendants object to this Instruction because it may tend to cause juror confusion and misinform the jury of the legal standard applicable to veil piercing claims. If permitted, this Instruction would indicate to the jurors that excessive domination alone is sufficient to pierce the corporate veil of an entity. It is well-settled that evidence of domination alone does not suffice, without an additional showing that it led to inequity, fraud or malfeasance and that such caused the damage to plaintiff. *TNS Holdgs., Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 339, 680 N.Y.S.2d 891, 893 (1998); *Morris v. New York State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141, 603 N.Y.S.2d 807 (1993). *See also Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997)(*citing Passalacqua*, 933 F.3d at 138)("[t]he element of domination and control never was considered to be sufficient of itself to justify the piercing of a corporate veil [and] even if a plaintiff showed that the dominator of a corporation had complete control over the corporation so that the corporation "had no separate mind, will, or existence of its own," New York law will not allow the corporate veil to be pierced in the absence of a showing that this control "was used to commit wrong, fraud, or the breach of a legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights, and that the control and breach of duty proximately caused the injury complained of.")

The language Plaintiffs have selectively and misleadingly quoted from Passalacqua, that is "New York law, as discussed, permits the corporate form to be disregarded where excessive control alone causes the complained of loss[,]" is not in context, and was used by the Court to show that a plaintiff does not have to prove fraud to prevail on a veil piercing claim.

*Passalacqua*, 933 F.3d at 141.

For an alternative to this portion of the Instruction, Defendants respectfully refer this Court to pages 9-22 of Defendants' Requests to Charge which Defendants submit correctly and completely explains the considerations relevant to the "domination and control" and "fraud or wrong" prongs of New York law on claims to pierce the corporate veil.  Exhibit A at 9-22

## PLAINTIFFS' SPECIAL JURY INSTRUCTION NO. 6

*There is a strong public policy favoring the presumption of corporate independence. However, the policy behind the presumption of corporate independence [encouragement of business development without personal risk to the shareholders and investors] is out weighted [sic] by a strong policy to protect those persons and businesses who deal with corporations. Passalacqua Business v. Resnick Developers, 933 F.2d 131, 139 (2d Cir. 1991)*

Defendants specifically object to this Instruction because it misrepresents the law applicable to Plaintiffs' claims.  While Plaintiffs initially acknowledge that there is a strong public policy favoring corporate independence (*i.e.* that Plaintiffs face a "heavy" burden, *see Feitshans v. Kahn*, No. 06-2125, 2007 U.S.Dist. LEXIS 63028, *13 (S.D.N.Y. Aug. 24, 2007) (Scheindlin, D.J.))[4], Plaintiffs then blatantly misstate the law by stating that this policy is "out weighted [sic] by a strong policy to protect those persons and businesses who deal with the corporation."  Plaintiffs are essentially seeking to have the Court instruct the jury that the interests of a creditor of a corporation always outweigh the strong policy favoring corporate

---

[4]     *See also Feitshans*, 2007 U.S. Dist. LEXIS 63028 at 12-13 stating as follows: In light of such presumption, the Second Circuit has stated that "under New York law, courts must be extremely reluctant to pierce the corporate veil" and should disregard the corporate form only where plaintiffs satisfy a "heavy burden" in showing that the corporation is being "used by an individual to accomplish his own and not the corporation's business."

independence.  If that were true, then, the concept of limited liability would be a legal fiction (as would the concept of piercing the corporate veil), because the law would impose personal liability on a principal of an entity every time that entity failed to meet its corporate obligations. That is not the law.  As set forth above, and in Defendants' Requests to Charge, corporate form is disregarded to reach a specific defendant only if there is complete domination and control by that defendant which leads to a fraud or wrong, which fraud or wrong caused injury to plaintiff.  *See e.g. Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1053 (2d Cir. 1997).

As proposed, this instruction would misinform the jury that, as a matter of law, the policy for protecting those who deal with individuals takes precedence to the strong presumption of corporate independence.  Quite the contrary: according to *Passalacqua*, (which Plaintiffs have incredibly cited as lending support to this improper instruction), which of the policies outweighs the other in light of the totality of evidence in a specific case is precisely what the jury must decide.  In that regard, Passalacqua provides the following:

> The jury must decide whether -- considering the totality of the evidence, the policy behind the presumption of corporate independence and limited shareholder liability -- encouragement of business development -- is outweighed by the policy justifying disregarding the corporate form -- the need to protect those who deal with the corporation.

*Passalacqua*, 933 F.3d at 139.

> Defendants propose as an alternative the following:
> Plaintiffs seek to hold the other Defendants liable for the balance due on Plaintiffs' unsatisfied judgment against Winter Films and Ikahn Productions.  They seek to do this by a procedure referred to as piercing the corporate veil.  In considering whether to pierce the corporate veil of Winter Films and Ikahn Productions and hold the other Defendants liable for the unpaid judgments against Winter Films and Ikahn Productions, you must remember that Plaintiffs must also overcome a legal presumption - a legal presumption which you must accept in Defendants' favor - known as corporate regularity.

I will explain to you what piercing a veil means.

If you do business with a corporation, it has a veil over it. That corporation alone has liability for its obligations, and you do not lift that veil and saddle that obligation on somebody else. So lawyers and judges say the doctrine is "piercing the corporate veil" if you want to hold somebody else liable for the debts of that corporation. And that's what this case is about. Plaintiffs seek to pierce the corporate veil of Winter Films and Ikahn Productions to hold the other Defendants liable for the debts of Winter Films and Ikahn Productions.

It is presumed that Winter Films and Ikahn Productions, like any corporation, are separate legal persons, separately responsible for their own debts, and that related corporations, such as parents, subsidiaries, or sister corporations, are separate, independent entities which alone are separately responsible for their own separate debts, even if the corporations are owned and controlled by the same individuals. It is presumed, in this case, Winter Films and Ikahn Productions, like any corporation, are individual, legal persons separate and part from their affiliates and their shareholders, officers and directors, who are not responsible for the debts of Winter Films and Ikahn Productions.

That is the essence of a corporation. Courts are reluctant to disregard the separate existence of related corporations by piercing the corporate veil and have consistently given substantial weight to the presumption of separateness.

What the Plaintiffs are really asking the jury to do is to discard the separate legal identity of Winter Films and Ikahn Productions and find that Plaintiffs, in effect, made an employment contract with not only Winter Films and Ikahn Productions, but with the other Defendants as well.

Exhibit A at 7-8.

## PLAINTIFFS' SPECIAL JURY INSTRUCTION NO. 7

*If you find that Ikan [sic] Productions entered into a valid employment agreement for the*

*services of Erick Feitshans, and that Michael Kahn and Laura Kahn were the sole owners of*

*Ikahn Productions and dominated Ikahn Productions and were solely responsible for the*

*wrongful failure of the Ikahn Productions to pay the Erick Feitshans the funds due him on the*

*employment agreement, you must find for Erick Feitshans and award him 172,938.00 plus*

*interest at the rate of 6% from July 12, 2002 to the present.*

*Pae v. Yoon, 41 A.D.3d 681, 682 (2d Dep't 2007)*

Defendants object to this Instruction because it may tend to cause juror confusion and misinform the jury of the legal standard applicable to veil piercing claims. First, as stated previously, the "validity"of the employment contracts is no longer an issue since the debts of the Entity Defendants were reduced to an arbitration award that was confirmed into a judgment. Second, Plaintiffs' Proposed Instruction assumes that Michael and Laura Kahn totally dominated and controlled Ikahn. Third, Plaintiffs' Proposed Instruction also assumes the second prong of the veil-piercing analysis (*i.e.*, that the total domination and control must have been used to commit a "fraud or wrong" that resulted in the plaintiff's complained of injury) thus completely ignoring Plaintiffs' burden at trial.

In fact, *Pae,* the case cited by Plaintiffs in support of this Instruction, first explains this very legal standard (thus putting it in perspective) by stating as follows:

> Generally, piercing the corporate veil requires a showing that: (1) the owners exercised complete domination of the corporation with respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in the plaintiff's injury. *Morris v. New York State Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 141, 623 N.E.2d 1157, 603 N.Y.S.2d 807). Testimony at trial established that the plaintiff and appellant's corporation entered into a valid agreement for the sale and purchase of goods, and that the appellant, the sole owner of the corporation, **dominated the corporation and was solely responsible for the <u>wrongful failure of the corporation to pay the plaintiff</u>.** The evidence also revealed the absence of corporate formalities, such as the lack of a distinction between corporate funds and the defendant's personal funds.

*Pae v. Yoon,* 41 A.D.3d 681, 682 (2d Dep't 2007)(emphasis added). Thus, it is clear that *Pae* is simply applying the New York test for veil piercing, and is using the word "wrongful" to indicate

committing of a "wrong" causing Plaintiffs' injury, *i.e.* nonpayment of the Entity Defendants' corporate debt to Plaintiffs.

Plaintiffs further object to this Instruction because January 4, 2008 the amount of what may be due Plaintiffs is not an issue with respect to which the jury needs to make a determination because Plaintiffs themselves have sought to bifurcate the issues of damages and liability. *See* the parties' Joint Pretrial Order dated December 21, 2007 (the "JPTO"), item no. 97 on the docket sheet for this action, at ¶8.

Defendants propose as an alternative the following:

If you find that Laura Kahn exercised such complete domination of Ikahn that such domination was used to commit a wrong which caused the injury complained of to Feitshans, and that such domination - and no other factor, including, but not limited to, Entity Defendants' failure as businesses - was the only factor responsible for Ikahn's failure to pay Feitshans amounts due to him, you may hold Laura Kahn personally liable for Ikahn's corporate debt to Feitshans. Similarly, if you find that Michael Kahn exercised such complete domination of Ikahn that such domination was used to commit a wrong which caused the injury complained of to Feitshans, and that such domination - and no other factor, including, but not limited to, Entity Defendants' failure as businesses - was the only factor responsible for Ikahn's failure to pay Feitshans amounts due to him, you may hold Michael Kahn personally liable for the Ikahn's corporate debt to Feitshans.

*See also* Defendants' Requests to Charge at 1-23.

## PLAINTIFFS' SPECIAL JURY INSTRUCTION NO. 8

*If you find that Winter Films entered into a valid employment agreement for the services of Steve Hodges, and that Michael Ashkin, Michael Kahn and Laura Kahn were the sole owners of Winter Films and dominated Winter Films and were solely responsible for the wrongful failure of the Winter Films to pay the Steve Hodges the funds due him on the employment agreement, you must find for Steve Hodges and award him 172,938.00 plus interest at the rate of*

130639                                   17

*6% from July 12, 2002 to the present.*

*Pae v. Yoon, 41 A.D.3d 681, 682 (2d Dep't 2007)*

    *See* Defendants' response to Plaintiffs' Instruction No. 7 above.  Defendants further object to this Proposed Instruction because it misstates the amount of Hodges' judgment against the Entity Defendants.[5]

    Finally, Defendants also object to this Proposed Instruction because it assumes that Plaintiffs have the same burden of proof with respect to their veil piercing claims against Ashkin as they do against L. Kahn and M. Kahn.  However, M. Ashkin was not a shareholder, owner, member, officer or director of Winter Films.  Thus, in order to pierce the corporate veils of the Entity Defendants to hold Mr. Ashkin personally liable for Winter Films' corporate obligations, Plaintiffs must prove that Mr. Ashkin was an equitable owner of Winter Films, *i.e.* that he had such considerable authority and control over Winter Films that he completely disregarded their corporate forms and acted as though their assets were his alone to manage and distribute and that he shuttled funds in and out of Winter Films without regard to corporate formalities and to suit his own convenience.  *See* e.g. *M&A Oasis, Inc. v. MTM Assocs., L.P.*, 307 A.D.2d 872, 874 764 N.Y.S.2d 9, 12 (1st Dep't 2003)

    Defendants propose as an alternative the following:

    If you find that Laura Kahn exercised such complete domination of Winter Films
that such domination was used to commit a wrong which caused the injury

---

    [5]    See the JPTO, ¶5, the parties' Joint Statement of Undisputed Facts, Fact No. 46 providing "[o]n December 4, 2003, an arbitration panel awarded damages to Hodges based on the March 1, 2000 contract in an amount of $85,769.46 plus interest from July 12, 2002 at a rate of 6%.  On or about July 1, 2004, the New York Supreme Court entered judgment in the amount of $85,769.46 plus interest from July 12, 2002 at a rate of 6% in favor of Hodges and against Winter Films."

complained of to Hodges, and that such domination - and no other factor, including, but not limited to, Entity Defendants' failure as businesses - was the only factor responsible for Winter Films' failure to pay Hodges amounts due to him, you may hold Laura Kahn personally liable for the Winter Films' corporate debt to Hodges.  Similarly, if you find that Michael Kahn exercised such complete domination of Winter Films that such domination was used to commit a wrong which caused the injury complained of to Hodges, and that such domination - and no other factor, including, but not limited to, Entity Defendants' failure as businesses - was the only factor responsible for Winter Films' failure to pay Hodges amounts due to him, you may hold Michael Kahn personally liable for Winter Films' corporate debt to Hodges.

With respect to Michael Ashkin, who was not a shareholder, owner, member, officer or director of Winter Films, if you find that Ashkin had such considerable authority and control over Winter Films that he completely disregarded the corporate form of Winter Films, and acted as though Winter Films' assets were his alone to manage and distribute, and that he shuttled funds in and out of Winter Films without regard to corporate formalities and to suit his own convenience, and that such domination was used to commit a wrong which caused the injury complained of to Hodges, and that such domination - and no other factor, including, but not limited to, Entity Defendants' failure as businesses - was the only factor responsible for the Winter Films' failure to pay Hodges amounts due to him, you may hold Michael Ashkin personally liable for the Winter Films' corporate debt to Hodges.

*See also* Defendants' Requests to Charge at 1-23.

Dated: New York, New York
       January 4, 2008

SALON MARROW DYCKMAN
NEWMAN & BROUDY LLP

By: _____
       Richard P. Romeo (RPR-3812)
       Petek Gunay (PG-2695)
       Attorneys for Defendants
       292 Madison Avenue
       New York, New York 10017
       (212) 661-7100 (telephone)
       (212) 661-3339 (facsimile)
       Email: rromeo@salonmarrow.com

130639                              19

To:    Richard Hamlish, Esq.
910 Hampshire Road, Suite G
Westlake Village, CA  91361
Phone: (805) 497-6632
Facsimile: (805) 497-2703
E-mail: dick@hamlish.com